

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

ATTORNEY GENERAL

Honorable W. P. Herms, Jr.
County Auditor
Waller County
Hempstead, Texas

Dear Sir:

Opinion No. 0-2499
Re: May the cost of assessing
taxes be borne by various
funds as described instead
of charging that cost to
the general fund?  And re-
lated questions.

Your recent request for an opinion of this De-
partment on the questions as are herein stated has been
received.

We quote from your letter as follows:

"Under our present practice in Waller County
our General Fund has such far reaching demands upon
it that throughout almost the entire year it has
outstanding warrants which cannot be paid.

"I have been informed - though not authorita-
tively - that there are certain ways in which the
General fund account may be relieved of the tremen-
dous burden of expense which it bears.

"In the first place, fees for assessing taxes
are borne by the General Fund.  From the accounting
standpoint this expense should be borne by all the
funds in the proportionate amount of the benefit
received by each fund.  The fees for collection of

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable W. P. Herms, Jr., Page 2

taxes are borne by all the funds. Since the collector deducts his fees and deposits the remainder with the County Treasurer for distribution by that officer to all the funds.

"Therefore, by the same token that cost of collecting taxes is borne by all the funds that receive benefit from such collections, why should not, and why can not, the cost of assessing taxes be borne by all those funds instead of charging that cost to the General fund which receives only a small portion of the benefit?

"Our present practice is to advance the assessor funds with which to bear the cost of assessing, and at the end of the year, pay him the difference between fees due him and the amount advanced. This is taken from the General Fund, amounting in 1939 to $1855 and some cents. Is it legal for this amount to be charged to all the funds according to good accounting practice?

"Also, in reference to the payment of our District Court reporter, a similar situation exists. His salary is paid from our General Fund. From the accounting standpoint this cost should be charged to the Jury Fund just as much as the payment of a juror should come from the Jury Fund, for both costs are definitely Court costs. Is it legal to charge this cost to the Jury Fund?"

Article 3937, Vernon's Annotated Civil Statutes, reads as follows:

"Each Assessor of taxes shall receive the following compensation for his services which shall be estimated on the total value of the property assessed as follows: For assessing the State and County Taxes on all sums for the first Two Million Dollars ($2,000,000) or less, five (5) cents for each One Hundred Dollars ($100) of property assessed. On all sums in excess of Two Million Dollars ($2,000,000) and less, than Five Million Dollars ($5,000,000), two and one-half (2½) cents on each One Hundred Dollars ($100), and on all

Honorable W. P. Herms, Jr., Page 3

two and one-fourth (2¼) cents on each One Hundred
Dollars ($100), provided, that in counties in which
the population does not exceed twelve thousand, five
hundred (12,500) inhabitants, the Assessor shall re-
ceive on all sums for the first Four Million Dollars
($4,000,000), the sum of five (5) cents for each One
Hundred Dollars ($100), and on all sums above such
amount the fee shall be as above stated,  one-half of
the above compensation shall be paid by the State and
one-half by the county; for assessing the taxes on all
drainage districts, road districts, or other political
subdivisions of the county; the Assessor shall be paid
three-fifths of one cent for each One Hundred Dollars
($100) of the assessed value of such districts or sub-
divisions.

"Provided that in counties in which the population
is not more than forty-two thousand (42,000) nor less
than forty-one thousand, fifty (41,050) inhabitants ac-
cording to the preceding United States Census, the Tax
Assessor shall be paid for assessing the taxes, in all
drainage districts, road districts, or other political
subdivisions of the county, two (2) cents for each One
Hundred Dollars ($100) of the assessed value of such
districts or subdivisions, provided further that such
compensation as is paid to the Assessor shall be pro-
rated among the various drainage districts, road dis-
tricts and other political subdivisions of the county,
according to the value of the property assessed in
each district or other political subdivision, and for
assessing the poll tax, five (5) cents for each poll,
which shall be paid by the State. The Commissioners
Court shall allow the Assessor of Taxes such sums of
money to be paid monthly from the County Treasury as
may be necessary to pay for clerical work, taking assess-
ments and making out the tax rolls of the county, but
such sums so allowed to be deducted from the amount al-
lowed  the Assessor by the Commissioners Court shall
not exceed the compensation that may be due the county
to him for assessing.

"It is further hereby provided that from and after
January 1, 1934, in the counties having a population
of more than seventy thousand (70,000), inhabitants ac-
cording to the last preceding Federal Census, the Tax

458

Collector shall advance to the Tax Assessor, out of State taxes collected by the Tax Collector, such sums of money to be paid weekly, as may be necessary to pay the salaries of said Tax Assessor, but such sums shall not total, before the annual tax rolls are submitted by him to the Comptroller of Public Accounts, more in one year than 60% of the estimate for said year hereinafter provided for.

"In counties of the class last mentioned on January 1st of each year the Assessor of taxes shall submit to the Comptroller of Public Accounts and County Auditor an estimate of State fees for assessing taxes for said year, which, if approved by said County Auditor and said Comptroller of Public Accounts, shall authorize the payment out of State taxes of the salaries in the next paragraph hereinabove provided; and at the time the assessor of taxes, submits his tax rolls each year, he shall be paid such balance due him from the State as shall be determined by the said Comptroller of Public Accounts and County Auditor and such balance shall be paid out of State taxes upon the warrant of the Comptroller of Public Accounts drawn upon the Tax Collector.

"It is not the purpose of this Act to change the salary of Tax Assessors as now fixed by law."

Article 7151a, Vernon's Annotated Civil Statutes, provides that:

"Hereafter, whenever the words 'assessor', 'assessor of taxes', 'collector', 'collector of taxes', or 'tax collector', are used, either in Article 7191 to 7359 inclusive, of Title 122 of the 1925 Revised Civil Statutes of Texas, including all amendments thereto, as well as the revised code of 1925, including all amendments, being known as the 1925 Revised Civil Statutes of Texas, same shall be applicable to and mean the one office or officer of assessor and collector of taxes, and shall be so construed as to accomplish the object and intent and carry out the purpose of Sectins 14 and 16 of Article 8, of the Texas Constitution, as the same was amended on November 8, 1932."

Honorable W. P. Herms, Jr., Page 5

It is to be noted that the population of Waller County is less than 20,000 inhabitants according to the last federal census and the tax-assessor-collector is compensated on a fee basis. In this connection, it should be pointed out, that fees due the assessor for his services as such are not payable out of the general fund, but such fees are payable out of the fees of office.

Article 3937 specifically provides that:

" . . . The Commissioners' Court shall allow the assessor of taxes such sums of money to be paid monthly from the county treasury as may be necessary to pay for clerical work, taking assessments and making out the tax rolls of the county, but such sums so allowed to be deducted from the amount allowed to the assessor as compensation upon the completion of said tax rolls, provided the amount allowed the assessor by the Commissioners' Court shall not exceed the compensation that may be due the county to him for assessing . . ."

Article 3939, among other things, provides:

"The Commissioners' Court shall issue an order on the county treasurer of their county to the assessor, for the amount due him for assessing the county tax of their county, to be paid out of the first money received from the collector on the rolls of that year."

The above quoted provision makes it perfectly clear where no money is advanced out of the county treasury to the assessor "to pay for clerical work, taking assessments and making out the tax rolls of the county", which the Commissioners' Court is authorized to do by Article 3937, that the several funds for which the assessment is made each bear their proportionate part of the cost of taking the assessments and making out the tax rolls of the county. This, for the reason that such costs are "paid out of the first money received from the collector on the rolls of that year." The "first money received" is money collected for and belonging to the respective funds for which the assessment was made and for which the assessor is paid a commission as provided for in said Article.

460

To our mind, it is equally clear that where money in the treasury to the credit of the general fund is advanced to the assessor, for the purposes enumerated in Article 3939, that said general fund should, to the extent of such advancement, be reimbursed "out of the first money received from the collector on the rolls of that year." Said fund will then have borne its proportionate part of the cost of assessment, because the "first money received" is a composite fund proportionately contributed to by all funds for whose benefit the assessment was made. Therefore, your first question is respectfully answered in the affirmative.

Article 2326, Vernon's Annotated Civil Statutes, reads as follows:

"The official shorthand reporter of each judicial district in this State and the official shorthand reporter of any county court, either civil or criminal in this State, shall receive a salary of two thousand one hundred dollars per annum, in addition to the compensation for transcript fees as provided for in this Act. Said salary shall be paid monthly by the commissioners' court of the county, out of the general fund of the county, upon the certificate of the district judge. In judicial districts of this State composed of two or more counties said salary shall be paid monthly by the counties of the district in proportion to the number of weeks provided by law for holding court in the respective counties in the district; provided, that in a district wherein in any county the term may continue until the business is disposed of, each county shall pay in proportion to the time court is actually held in such county."

Waller County is in the 9th Judicial District, which is composed of four counties. Article 2326(d), Vernon's Annotated Civil Statutes, provides the salary for the official shorthand reporter in each judicial district composed of four counties in this State, when the population of said four counties total in the aggregate, in excess of 100,000 population according to the last preceding Federal census, and which alone constitutes one or more judicial dis-

Honorable W. P. Herms, Jr., Page 7

tricts. The counties composing the 9th Judicial District are Polk, San Jacinto, Montgomery, and Waller Counties. The total population of the four counties is less than 100,000 inhabitants; therefore, Article 2326(d), supra, does not apply to the 9th Judicial District with reference to the salary of the official shorthand reporter.

We are of the opinion that Article 2326, supra, is applicable with reference to the salary of the official shorthand reporter of the 9th Judicial District, which includes Waller County, and the statute specifically provides that the compensation of the official shorthand reporter shall be paid out of the general fund. Also, Article 2326(a) provides for certain expenses and the manner of payment thereof to official shorthand reporters and deputy official shorthand reporters of the district courts of the State of Texas, composed of more than one county, and this statute also provides that such expenses shall be paid out of the general fund.

Therefore, you are respectfully advised that the salary of the official shorthand reporter must be paid from the general fund and no part of the same can be legally charged to the jury fund.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

AW:BBB